UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JEROME BROWN                                    CIVIL ACTION


VERSUS
                                                NO: 14-1373


BEVERLY INDUSTRIES, LLC                         SECTION: R(5)


<u>**ORDER AND REASONS**</u>

Defendant Beverly Industries, LLC moves to dismiss plaintiff Jerome Brown's *pro se* claim for hostile work environment under Title VII of the Civil Rights Act of 1964.[1]  For the following reasons, the Court GRANTS the motion.


**I. Background**

This is a hostile work environment and retaliation suit by a former employee against his former employer.  Defendant Beverly employed plaintiff, Jerome Brown, on its pipe fitting crew from May 3, 2013 until it terminated his employment on August 7, 2013.

Plaintiff has filed a complaint, an opposition to defendant's partial motion to dismiss, and a motion for summary judgment.[2] Because plaintiff is a *pro se* litigant, the Court considers the facts alleged in plaintiff's complaint, opposition, and motion for summary judgment.  *See Clark v. Huntleigh Corp.*, 119 F. Appx. 666,

---

[1]    R. Doc. 12.

[2]    R. Docs. 1, 15, & 37.

667 (5th Cir. 2005).

Plaintiff alleges the following facts in his complaint. Plaintiff was hired by defendant at some time in May 2013 as a lead man on the pipe fitting crew.[3]  Shortly after, defendant promoted plaintiff to pipe crew foreman.[4]  In his opposition, plaintiff clarifies that he was promoted to foreman at some time in June 2013.[5]  At a later point, defendant moved plaintiff to the position of foreman of the flat fence line.[6]  At this point, an African American co-worker, Brian Scott, and two white co-workers, Blake Chauvenaux and Jeremy Muskenberger, subjected plaintiff to racially discriminatory name calling.[7]  Specifically, plaintiff states that they called him "Nigger" and "Uncle Tom ass nigger."[8]  Plaintiff also alleges that they called him "Bitch" and "Motherfucker."[9]

In August 2013, plaintiff reported the name calling to his supervisor, Doug Flint.[10]  Mr. Flint responded, "That is how they

---

[3]     R. Doc. 1 at 2.

[4]     *Id.*

[5]     R. Doc. 15 at 7.

[6]     R. Doc. 1 at 2.

[7]     *Id.*

[8]     *Id.* at 2.

[9]     *Id.*

[10]    *Id.* at 2-3.

talk around here," and took no further action.[11]  Plaintiff also reported the conduct to Denny Broud, Mr. Scott's supervisor, but again no action was taken.[12]   On August 7, 2013, Mr. Flint terminated plaintiff after he complained about a co-worker's violation of machine safety operation protocols.[13]  Separately, plaintiff alleges that he was terminated after reporting the racial remarks.[14]

Describing the effect of the alleged remarks, plaintiff alleges: "It was very difficult for me to perform my daily duties as a lead man on the pipe crew because [of the] racial[l]y hostile work environment, harassment and racial discrimination from co-workers."[15]

Plaintiff alleges additional facts in his opposition.[16] Contrary to plaintiff's complaint, where he alleges that Mr. Flint took no action after plaintiff reported Mr. Scott's name calling, plaintiff now states that Mr. Flint called Mr. Scott into his office to discuss the name calling two weeks before plaintiff was

---

[11]    *Id.* at 3.

[12]    *Id.*

[13]    *Id.*  Plaintiff states that he reported one of his co-workers for sleeping and using drugs while operating heavy equipment.  *Id.*; R. Doc. 15 at 10.

[14]    R. Doc. 1 at 2, 5.

[15]    *Id.* at 3.

[16]    R. Doc. 15.

terminated, at which time Mr. Flint spoke to Mr. Scott about the name calling and had Mr. Scott sign a disciplinary form, which was placed in his employee file.[17]    Again, contrary to plaintiff's complaint where he alleges that Mr. Scott, Mr. Muskenberger, and Mr. Chauvenaux commenced the name calling at the same time, plaintiff now alleges that Mr. Chauvenaux and Mr. Muskenberger did not engage in the name calling until *after* Mr. Scott was disciplined for his conduct.[18]    Given that Mr. Scott was not disciplined until two weeks before plaintiff was terminated, this presents a maximum of a two-week window during which plaintiff was potentially subject to remarks by Mr. Muskenberger and Mr. Chauvenaux.    In spite of these specific allegations, plaintiff alleges that he endured the name calling throughout the entire course of his employment.[19]    Plaintiff also now states that he reported the conduct to other individuals, including his manager, Brian Kilgen, and another supervisor, Byron Dupre.[20]

Plaintiff also now alleges new facts surrounding an incident between himself and his co-workers on the day he was terminated. Specifically, plaintiff states that in his presence, Mr.

---

[17]    *Id.* at 3.

[18]    *Id.* at 20 ("After Brian Scott was disciplined for his conduct[,] co-worker's Jeremy Muskenberger and Blake Chauvenaux decided that they would get in on the name calling.")

[19]    *Id.*

[20]    *Id.* at 5.

Chauvenaux, while using a front loader, knocked over another co-worker's materials.[21]  Plaintiff then asked Mr. Chauvenaux why he was destroying company property, to which Mr. Chauvenaux responded, "Fuck him," referring to the co-worker whose materials he had knocked over.[22]  At this point, Mr. Chauvenaux attempted to run plaintiff over with the front loader, but plaintiff avoided the collision.[23]

Plaintiff first reported the incident to his supervisor, Mr. Flint.[24]  Shortly later, plaintiff reported the incident and the ongoing racial remarks separately to Terry Bolden, another supervisor, and an unnamed "safety man."[25]  After plaintiff relayed his account in Mr. Bolden's office in the presence of Mr. Bolden and the "safety man," Mr. Bolden called Mr. Flint and other senior managers into his office for a meeting.[26]  Plaintiff was not asked to stay for the meeting.[27]  Plaintiff alleges that Mr. Flint and the other senior managers gave him "a really dirty look" as he left Mr.

---

[21]     *Id.* at 14.

[22]     *Id.* at 15.

[23]     *Id.*

[24]     *Id.*

[25]     *Id.* at 15–16.

[26]     *Id.* at 16.

[27]     *Id.*

Bolden's office.[28]

Some forty-five minutes later, Mr. Flint and Mr. Kilgen confronted plaintiff and called him "every name in the book," including "stupid nigger," while telling him to "get [his] black ass of [their] property."[29]   At this point, Mr. Flint handed plaintiff a termination form.[30]   Plaintiff alleges that defendant retaliated against him for reporting the ongoing racial remarks to upper management.[31]

Plaintiff attaches a Disciplinary Form and Separation Notice to his complaint.[32]   Both documents list "reduction in work force" as the reason for plaintiff's termination.[33]

In his motion for summary judgment, plaintiff alleges for the first time that he first reported the alleged conduct to his supervisor, Willie Dolan.[34]   According to plaintiff, Mr. Dolan took no action and advised plaintiff to ignore the name calling. Plaintiff states that Mr. Dolan told him his co-workers were upset

---

[28]    *Id.*

[29]    *Id.* at 17.

[30]    *Id.*

[31]    *Id.* at 19.

[32]    *See* R. Doc. 1-2 at 7 & 12.

[33]    *Id.*

[34]    R. Doc. 37 at 2.

6

because he was selected over them for a position.[35]

Defendant has filed a partial motion to dismiss seeking dismissal of plaintiff's hostile work environment claim.[36] Defendant argues that the racial discrimination and harassment alleged by plaintiff is not actionable because it amounts only to isolated remarks, and therefore was neither severe nor pervasive.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a pleading that states a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244

---

[35]    *Id.*

[36]    Defendant does not seek dismissal of plaintiff's retaliation claim.

(5th Cir. 2009).  The Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Id.*  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 256.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Block*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

When examining a motion to dismiss a *pro se* complaint, courts ensure the complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Clark*, 119 F. Appx. at 667 (citations and quotation marks omitted).  In considering a motion to dismiss, a district court may generally not "go outside the complaint," *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003), but when reviewing a *pro se* complaint, a district court is

8

"required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *see also Clark*, 119 F. Appx. at 667.

## III. Discussion

For the reasons that follow, the Court grants defendant's motion to dismiss plaintiff's hostile work environment claim.

To state a claim under Title VII based on race discrimination creating a hostile working environment, the plaintiff must show: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was race-based; and (4) that the harassment affected a term, condition, or privilege of employment. *White v. Government Employees Ins.*, 457 Fed. App'x 374, 379-80 (5th Cir. 2012). When the alleged harasser was a coworker, "the plaintiff must also prove that [his] employer knew or should have known about the harassment and failed to take prompt remedial action." *Id.* at 380. In other words, the plaintiff must prove negligence on behalf of the employer. *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (quoting *Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013) (Thomas, J. concurring)).

Race-based harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks and citation omitted).   The harassment must be "both objectively and subjectively abusive." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004) (citing *Harris v. Forklift, Systems, Inc.*, 510 U.S. 17, 21-22 (1993); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998)).   Objectively offensive harassment is the type a reasonable person would find hostile or abusive.   *See Harris*, 510 U.S. at 21.   In determining whether harassment is objectively so severe or pervasive to alter the conditions of the plaintiff's employment, Courts look to "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance." *Id.*   Courts also consider whether the alleged conduct undermines the plaintiff's workplace competence. *Butler*, 161 F.3d at 270.   Ultimately, courts look to the totality of the circumstances.   *Boh Bros. Const. Co.*, 731 F.3d at 453.

The Fifth Circuit has previously noted the Supreme Court's guidance that "Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir.

10

2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).   Still,   the   Fifth   Circuit   has   recognized   that "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII."   *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (quoting *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1049 n.9 (5th Cir. 1996)).

In a recent case cited by defendant, the Fifth Circuit upheld the district court's grant of summary judgment in favor of a defendant on a hostile work environment claim when the harassment was not severe or pervasive because the racist remarks were isolated and often not directed at the plaintiff.   *White v. Government Employees Ins. Co.*, 457 Fed. Appx. 374, 381 (5th Cir. 2012) (holding that cumulatively, co-worker's reference to a client as a "nigger" in plaintiff's presence, co-worker's reference to an office as "ghetto" or "FEMA trailer," and co-worker's comment that plaintiff "always wanted to be a white female" did not rise to the level of severity or pervasiveness necessary to support a hostile work environment claim).   The Fifth Circuit has reached the same conclusion when reviewing cases presenting similar facts.   *See, e.g., Johnson v. TCB Const. Co.*, 334 Fed. Appx. 666, 671 (5th Cir. 2009) (finding insufficient evidence to establish a hostile work environment when a supervisor told plaintiff "he was just 'like a

damn nigger'"; plaintiff "offered no evidence concerning its objective effect on his 'work performance'"; and while supervisor frequently used the term "nigger," "these comments were not uttered in [plaintiff's] presence" and there was not evidence "that they affected his job.").

In contrast, the Fifth Circuit found sufficient evidence for a plaintiff's hostile work environment claim to survive summary judgment when the plaintiff endured years of racial epithets, including "nigger" and "little black monkey." *Walker*, 214 F.3d at 619-22. *See also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182, 185 (4th Cir. 2001) (finding that "frequently and highly repugnant insults," including the word, "nigger," "were sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere . . . was racially hostile"); Daniels *v. Essex Group, Inc*., 937 F.2d 1264, 1266 (7th Cir. 1991) (finding summary judgment for defendant inappropriate where plaintiff endured "nigger" jokes over ten years, his co-workers hung a "human-sized dummy with a black head" from a doorway, and someone scrawled "KKK" and "All niggers must die" onto the bathroom walls).

Defendant moves to dismiss plaintiff's hostile work environment claim because, according to defendant, plaintiff does not establish that the alleged harassment based on race was plausibly so severe or pervasive that it affected a term,

condition, or privilege of plaintiff's employment. Defendant bases its argument on its categorization of the alleged racial harassment as isolated remarks. Because defendant does not challenge plaintiff's hostile work environment claim on any other basis, the Court, for the purposes of evaluating defendant's motion, assumes plaintiff's claim meets the other requirements to state a hostile work environment claim. Therefore, the Court evaluates only whether plaintiff sufficiently pleads that the alleged harassment affected a term, condition, or privilege of his employment.

The Court finds that plaintiff does not plead sufficient facts to sustain a claim for hostile work environment. Specifically, plaintiff's allegations do not plausibly demonstrate that the alleged remarks were so objectively and subjectively severe and pervasive as to alter a term, condition, or privilege of his employment.

As an initial matter, in addition to the obviously racially-motivated remarks alleged by plaintiff, plaintiff alleges that his co-workers called him "Bitch" and "Motherfucker." These remarks are not based on race and therefore cannot sustain a race-based hostile work environment claim. *See Baker v. FedEx Ground Package System Inc.*, 278 Fed. Appx. 322, 329 (5th Cir. 2008) (holding that "[t]he phrases 'fired girl walking' and 'stupid are not 'based on race' and, thereby, do no sustain a race-based hostile work environment claim").

13

Plaintiff's complaint, opposition, and motion for summary judgment present a moving target full of inconsistent and fragmentary allegations.  Plaintiff conclusorily alleges that he endured the racial remarks throughout the entire course of his employment.   But the specific facts alleged by plaintiff are inconsistent with this statement.  Plaintiff states that Mr. Scott, an African American co-worker, did not commence the name calling until June 2013, when plaintiff was promoted, and that Mr. Chauvenaux and Mr. Muskenberger, white co-workers, did not commence the name calling until Mr. Scott was disciplined, which plaintiff separately revealed was not until two weeks before he was terminated.   Examining these specific facts, contrary to plaintiff's blanket assertion that he endured constant harassment for the entire length of his employment, plaintiff specifically alleges that Mr. Scott began the name calling in June 2013, and that Mr. Chauvenaux and Mr. Muskenberger began the name calling, at most, two weeks before he was terminated.  Finally, the only other alleged name calling is that by Mr. Flint and Mr. Kilgen, which plaintiff alleges occurred during a single interaction in the final minutes of his employment.  This is an isolated incident.

Likewise, plaintiff's allegations regarding the severity of the harassment, whether it was physically threatening or humiliating, and whether it interfered with his workplace performance are non-existent or conclusory.   Specifically,

14

plaintiff alleges: "It was very difficult for me to perform my daily duties as a lead man on the pipe crew because [of the] racial[l]y hostile work environment, harassment and racial discrimination from co-workers."[37]  Plaintiff offers no additional facts as to the effect of the harassment.[38]  Without more, plaintiff fails to allege plausibly that the harassment was objectively or subjectively severe or pervasive.

Drawing all reasonable inferences in favor of the adequately plead facts in plaintiff's complaint and opposition, plaintiff alleges that an African American co-worker engaged in racially derogatory name calling over approximately a two month period and that he was disciplined, that two white co-workers engaged in the same name calling for approximately two weeks, and that two other white supervisors engaged in racially derogatory name calling during a single encounter on the day plaintiff was terminated. Even if the Court accepts as true plaintiff's blanket allegation that he endured a full three months of harassment, plaintiff's allegations pale in comparison to those where the Fifth Circuit has found that harassment could be severe and pervasive. *See, e.g.*, *Walker*, 214 F.3d at 619-22.  The Court does not suggest that the

---

[37]    R. Doc. 1 at 3.

[38]    The Court notes that plaintiff alleges that Mr. Chauvenaux attempted to hit him with a front loader, but plaintiff does not allege that this incident was racially motivated.

alleged remarks are not incendiary and highly offensive, but here, the time period involved and the nature of the remarks indicate that the conduct was not so extreme as to be severe or pervasive. *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595-96 (5th Cir. 1995) (noting that "the 'mere utterance of an . . . epithet which engenders offensive feelings in an employee,'" without more, is insufficient to support a finding of hostile work environment) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).

Moreover, besides plaintiff's conclusory allegation that the remarks made performing his work duties "very difficult," plaintiff alleges no facts as to the effect of the harassment. For example, there is no indication from plaintiff that the remarks were physically threatening or humiliating or of how they specifically impacted his work performance. Further, plaintiff had other complaints about the work environment unrelated to the alleged remarks, such as unsafe work practices like workers' sleeping, using drugs, and joking around while on the work site. These allegations of other conduct go to disputes with defendant that have nothing to do with plaintiff's race.

For these reasons, the Court finds that plaintiff fails to allege sufficient facts to demonstrate that the alleged harassment was plausibly severe and pervasive. Accordingly, plaintiff fails to state a claim for hostile work environment.

16

## IV. Conclusion

For the foregoing reasons, defendant's partial motion to dismiss is granted.  Plaintiff's hostile work environment claim is dismissed.

New Orleans, Louisiana, this 12th day of March, 2015.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE